FILED

NOT FOR PUBLICATION

JUN 20 2017

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**UNITED STATES BANKRUPTCY APPELLATE PANEL**
**OF THE NINTH CIRCUIT**

In re:                          )   BAP No. AZ-16-1005-LBJu
                                )
CHRISTINA M. RAVAGO,            )   Bk. No. 13-16053-BMW
                                )
             Debtor.            )   Adv. No. 14-00066-BMW
_____ )
                                )
CHRISTINA M. RAVAGO,            )
                                )
             Appellant,         )
                                )
v.                              )   **M E M O R A N D U M**[*]
                                )
BANK OF AMERICA; RECONTRUST     )
COMPANY; LANDSAFE APPRAISAL     )
SERVICES; MICHAEL LEBSACK;      )
NATIONSTAR MORTGAGE LLC;        )
NATIONSTAR MORTGAGE HOLDINGS,   )
INC.,                           )
                                )
             Appellees.         )
_____ )

Argued and Submitted on May 18, 2017
at Phoenix, Arizona

Filed - June 20, 2017

Appeal from the United States Bankruptcy Court
for the District of Arizona

Honorable Brenda Moody Whinery, Bankruptcy Judge, Presiding.
_____

Appearances:    Jana Happel of Southern Arizona Legal Aid, Inc.
                argued for Appellant Christina M. Ravago; Andrea
                McDonald Hicks argued for Appellees Bank of
                America, Landsafe Appraisal Services, Michael
                Lebsack and ReconTrust Company; Melissa Louise
                Cizmorris of Akerman LLP argued for Appellees

_____

[*]This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1.

Nationstar Mortgage Holdings, Inc. and Nationstar Mortgage LLC.

_____

Before: LAFFERTY, BRAND, and JURY, Bankruptcy Judges.


**INTRODUCTION**

During her chapter 13[1] bankruptcy, Debtor Christina M. Ravago filed an adversary proceeding seeking damages against her mortgage lender and related parties under various theories, all of which were based on allegations that the defendants had violated the terms of the National Mortgage Settlement ("NMS")[2] by proceeding with a prepetition trustee's sale of her residence while her application for a loan modification was under consideration.  The bankruptcy court dismissed all but one of Debtor's claims without leave to amend, concluding that the NMS did not create a private right of action for individual borrowers to enforce its terms.  We AFFIRM.

---

[1]Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.  "ARS" references are to the Arizona Revised Statutes.

[2]Under the NMS, which was finalized in 2012, five of the country's largest mortgage servicers/banks (Ally/GMAC, Bank of America, Citi, JP Morgan Chase, and Wells Fargo) agreed to provide $20 billion of mortgage-related relief to homeowners and to abide by new servicing standards meant to address some of the worst foreclosure abuses.  Under the NMS, only state attorneys general can sue for alleged noncompliance with its terms. Penermon v. Wells Fargo Bank, N.A., 47 F. Supp. 3d 982, 993 n.2 (N.D. Cal. 2014).

## FACTS

On July 17, 2013, Debtor's Tucson residence (the "Property") was sold at a trustee's sale. Although Debtor acknowledged she was in default and had notice of the sale, she believed that the trustee's sale would be cancelled or postponed pending consideration of her recently submitted loan modification application.

On September 16, 2013, Debtor filed a chapter 13 petition. Despite the fact that the Property had been sold and a trustee's deed recorded, Debtor listed on her schedules both the Property and a debt to Nationstar Mortgage LLC ("Nationstar") secured by the Property. In her plan, which was confirmed December 31, 2015, Debtor proposed an ongoing monthly mortgage payment to Nationstar and indicated that she intended to file an adversary proceeding to challenge the trustee's sale and to bring "claims relating to breach of contract; violation of FHA regulations; etc." Debtor also listed on Schedule B a "[c]laim against Bank of America, Nationstar, Recon[T]rust, House Appraisor [sic] for wrongful foreclosure, violation of the National Mortgage Settlement Agreement, breach of contract, etc. To be filed as adversary proceeding."

On October 4, 2013, Debtor filed a proof of claim on behalf of Nationstar, asserting a secured claim of $90,000 and an unsecured claim of $20,000.[3] On January 21, 2014, Debtor filed a complaint against Appellees Bank of America, N.A. dba Bank of

---

[3]Debtor later filed an amended claim that reduced the unsecured portion of the debt.

-3-

America Home Loan Servicing ("B of A"), Nationstar Mortgage Holdings, Inc., and Nationstar (collectively, "Nationstar Defendants"), ReconTrust Company, N.A., Landsafe Appraisal Services, Inc., and Michael Lebsack, an appraiser who conducted an appraisal of the Property on behalf of B of A. The Complaint pleaded seven causes of action: (1) an objection to the proof of claim that Debtor had filed on behalf of Nationstar on grounds that any debt owed to Nationstar was unenforceable; (2) violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq., against ReconTrust and the Nationstar Defendants; (3) violation of the Arizona Consumer Fraud Act ("ACFA"), ARS § 44-1521 et seq., against the Nationstar Defendants; (4) common law fraud against B of A and the Nationstar Defendants; (5) negligent misrepresentation against Landsafe and Lebsack; (6) tortious breach of the duty of good faith and fair dealing against B of A and the Nationstar Defendants; and (7) filing false documents under ARS § 33-420 against ReconTrust and the Nationstar Defendants.[4] Debtor sought monetary damages for each cause of action except the claim objection.

According to the general allegations of the complaint, Debtor purchased the Property in September 2009. Debtor obtained a loan for the purchase from KB Home Mortgages LLC; the note representing the obligation was secured by a deed of trust

---

[4]Causes of action 1, 4, and 5 are not at issue in this appeal. The bankruptcy court disallowed the Nationstar claim filed by Debtor because Nationstar did not oppose the objection and, on appeal, Debtor has not assigned error to the dismissal of the negligent misrepresentation claim or the common law fraud claim.

-4-

against the Property. In January 2012 the note and deed of trust were assigned to B of A. On April 30, 2012, B of A substituted ReconTrust as the trustee under the deed of trust.

Debtor further alleged that nearly a year later, on April 10, 2013, ReconTrust recorded a "Notice of Trustee's Sale Arizona" indicating that a trustee's sale was scheduled for July 17, 2013. Debtor contacted B of A to ask for help with her payments and thereafter completed a loan modification application and transmitted the application and supporting documentation to B of A at a fax number provided by B of A. B of A sent Debtor a letter dated May 21, 2013, informing her that her loan modification application had been denied because B of A had not received proper documentation within the required time frame. The letter did not explain what documentation was missing but stated that Debtor had 30 days to appeal.

The allegations continue: On May 30, 2013, before expiration of the appeal period, Nationstar wrote to Debtor informing her that, effective June 4, 2013, Nationstar "received transfer of the loan." The letter also informed Debtor that any pending loan modifications "will pick up where they left off and will have all of your documentation" and provided information on how to contact Nationstar. B of A did not notify Debtor of the transfer. Debtor alleged on information and belief that Nationstar "either did not inform ReconTrust of the change of Beneficiary on the Deed of Trust, nor ratified without notification of all other concerned parties, the Trustee's sale date, thereby misleading RAVAGO that B of A no longer had the right to continue with the Trustee's sale." Complaint, ¶ 24c.

-5-

Because B of A did not inform Debtor that the trustee's sale would proceed even after B of A sold its beneficial interest in the deed of trust to Nationstar, Debtor believed the trustee's sale had been cancelled or stayed.

According to the complaint, a few days after she received the May 30 letter from Nationstar, Debtor consulted a nonprofit housing counseling service and, with their help, submitted a loan modification application to Nationstar on June 10, 2013. Three days later, Nationstar acknowledged receipt of the application and assigned a Single Point of Contact to Debtor. The Single Point of Contact person was changed twice thereafter by letters dated June 15 and July 31, 2013 (after the trustee's sale). On June 17, 2013, Nationstar sent a letter to Debtor informing her that Nationstar would review and determine eligibility within 20-60 days (the "June 17 Letter"). Based on this representation, Debtor believed Nationstar was considering her loan modification application in lieu of proceeding with the trustee's sale. On June 18, 2013, Nationstar requested additional documentation with a deadline of July 19, 2013 (two days after the scheduled trustee's sale). Debtor submitted the documentation prior to the date of the scheduled trustee's sale.

Debtor further alleged that on June 18, 2013, B of A executed an assignment of its deed of trust to Nationstar; that document was recorded July 16, 2013. No copy of the assignment was provided to Debtor.

On July 17, 2013, the Property was sold at a trustee's sale to Carboneros Corporation for $92,000. ReconTrust executed a Trustee's Deed upon Sale granting the Property to Carboneros;

-6-

that document was recorded July 26, 2013; a corrected deed of trust (correcting the grantee's name) was recorded August 20, 2013.

After the trustee's sale, on July 31, 2013, Nationstar sent a letter to Debtor informing her that her Single Point of Contact had changed again and informing her of a website she could "contact" to obtain more information on workout solutions.

Debtor further alleged that the NMS entered into on February 9, 2012 by the United States, 49 states, including Arizona, and several mortgage lenders, including B of A, placed restrictions on "dual tracking," the practice of a mortgage servicer to continue foreclosure proceedings while a loan modification application is pending. Other provisions of the NMS address the treatment of pending loan modification applications when servicing rights are transferred from a signatory to the NMS to another servicer, i.e., the successor servicer is required to accept and continue processing pending loan modification requests. Debtor alleged, on information and belief, that B of A had not informed Nationstar of the status of Debtor's loan modification application; alternatively, she alleged that Nationstar ignored any such communication from B of A.

On February 21, 2014, Defendants jointly moved to dismiss the adversary proceeding under Civil Rule 12(b)(1) (applicable via Rule 7012) for lack of subject matter jurisdiction and/or because Defendants did not consent to the bankruptcy court's entry of a final judgment; because Debtor waived claims relating to the trustee's sale; and for failure to state a claim under Civil Rule 12(b)(6). Debtor filed an opposition, and Defendants

filed replies. After several continuances, the hearing on the motion to dismiss occurred on November 6, 2014. At that hearing, the bankruptcy court took the matter under advisement; the court issued its oral ruling at a hearing on June 11, 2015 and issued an order December 29, 2015 denying the motion to dismiss the first cause of action (objection to proof of claim no. 1), disallowing claim no. 1, and granting the motion to dismiss causes of action 2-7 with prejudice. Debtor timely appealed.

**JURISDICTION**

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(B) and (O). We have jurisdiction under 28 U.S.C. § 158.

**ISSUES**

1. Did the Nationstar Defendants waive their objection to the bankruptcy court's entry of a final judgment in the adversary proceeding?

2. Did the bankruptcy court err in dismissing Debtor's second cause of action for violation of the Fair Debt Collection Practices Act?

3. Did the bankruptcy court err in dismissing Debtor's third cause of action for violation of the AFCA?

4. Did the bankruptcy court err in dismissing Debtor's sixth cause of action for tortious breach of the duty of good faith and fair dealing?

5. Did the bankruptcy court err in dismissing Debtor's seventh cause of action for filing false documents under ARS § 33-420?

6. Did Debtor waive any argument that the bankruptcy court

-8-

abused its discretion in dismissing Debtor's Complaint with prejudice?

<strong>STANDARD OF REVIEW</strong>

We review de novo whether the bankruptcy court had authority to enter a final judgment. Hasse v. Rainsdon (In re Pringle), 495 B.R. 447, 455 (9th Cir. BAP 2013). We also review de novo the bankruptcy court's order granting a motion to dismiss for failure to state a claim under Civil Rule 12(b)(6). Movsesian v. Victoria Versicherung AG, 670 F.3d 1067, 1071 (9th Cir. 2012) (en banc). Under de novo review, we look at the matter anew, as if it had not been heard before, and as if no decision had been rendered previously, giving no deference to the bankruptcy court's determinations. Freeman v. DirecTV, Inc., 457 F.3d 1001, 1004 (9th Cir. 2006).

The bankruptcy court's dismissal of a complaint without leave to amend is reviewed for abuse of discretion. Tracht Gut, LLC v. County of Los Angeles Treasurer & Tax Collector (In re Tracht Gut, LLC), 503 B.R. 804, 810 (9th Cir. BAP 2014). A bankruptcy court abused its discretion if it applied the wrong legal standard or its findings were illogical, implausible or without support in the record. TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011).

<strong>DISCUSSION</strong>

**A. The Nationstar Defendants impliedly consented to the bankruptcy court's entry of a final judgment.**

The Nationstar Defendants assert on appeal that the bankruptcy court lacked authority to enter a judgment in the

adversary proceeding because it was not a core proceeding.[5]  In the bankruptcy court, the Nationstar Defendants expressly objected to the bankruptcy court's entry of a final judgment but simultaneously moved to dismiss the complaint, i.e., for entry of a final judgment in favor of Defendants.  Although these conflicting assertions do not necessarily add up to a waiver of the Nationstar Defendants' objection to the bankruptcy court's authority to enter a final judgment, the Nationstar Defendants did not cross-appeal the bankruptcy court's entry of a final judgment, nor did they elect to appeal to an Article III court, opting instead to submit to the jurisdiction of this Panel.  Under these circumstances, the Nationstar Defendants impliedly consented to entry of a final judgment by the bankruptcy court.  See In re Pringle, 495 B.R. at 458-60 (once the tribunal's authority to enter a final judgment is put at issue, further purposeful proceeding in the forum indicates consent), citing Exec. Benefits Ins. Agency v. Arkison (In re Bellingham Ins. Agency, Inc.), 702 F.3d 553, 569 (9th Cir. 2012), aff'd, Exec. Benefits Ins. Agency v. Arkison, ___ U.S. ___, 134 S. Ct. 2165 (2014).  See also Wellness Int'l Network, Ltd. v. Sharif, ___ U.S. ___, 135 S. Ct. 1932, 1947-48 (2015) (holding that consent

_____

[5]The caption to the jurisdiction discussion in the Nationstar Defendants' brief is "This Court Does Not Have Subject Matter Jurisdiction Over These Claims Because the Property was Sold Prior to the Bankruptcy and was Not Part of the Estate." However, the body of the discussion focuses on the court's authority to enter a final judgment and does not address subject matter jurisdiction.  As we have previously noted, subject matter jurisdiction and authority to enter a final judgment are distinct matters.  In re Pringle, 495 B.R. 455.

-10-

to bankruptcy court adjudication of non-core claims may be implied, so long as it is knowing and voluntary).

**B.    Standard on Motion to Dismiss**

A motion to dismiss under Civil Rule 12(b)(6) challenges the sufficiency of the allegations set forth in a complaint and may be based on either a lack of a cognizable legal theory or sufficient facts alleged under a cognizable legal theory. Johnson v. Riverside Healthcare Sys., LP, 534 F.3d 1116, 1121 (9th Cir. 2008).  The court's review is limited to the allegations of material facts set forth in the complaint, which must be read in the light most favorable to the non-moving party and, together with all reasonable inferences therefrom, must be taken as true.  Pareto v. F.D.I.C., 139 F.3d 696, 699 (9th Cir. 1998).

The factual allegations in the complaint must state a claim for relief that is facially plausible. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); see also Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).  "[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense."  Iqbal, 556 U.S. at 679.  The Court need not "accept as true a legal conclusion couched as a factual allegation."  Iqbal, 556 U.S. 662 at 678.

"[W]here a complaint includes allegations of fraud, Federal Rule of Civil Procedure 9(b) requires more specificity including an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations."  Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th

-11-

Cir. 2007) (citation and internal quotations omitted).

**C.    The bankruptcy court did not err in dismissing the second cause of action for violation of the FDCPA.**

Under the FDCPA, "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C. § 1692e.  A "debt collector" is defined as any person (1) "who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts," or (2) "who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).

Thus, to state a claim under the FDCPA, a plaintiff must allege facts showing that the defendant fits one of the definitions of "debt collector" and that the defendant used false, deceptive, or misleading representations in connection with the collection of a debt.  Here, Debtor alleged:

> 60. Defendants NATIONSTAR, NATIONSTAR, LLC, and RECONTRUST, and each of them, are debt collectors as defined by the FDCPA, collecting debts owed for the owners of the note as a regular and normal part of their business.

> 61. Defendants, and each of them, use various modes of interstate commerce to effectuate such debt collection activities.

> 62. Defendants, and each of them, have used the mails to directly communicate with Plaintiff with regard to collection of the mortgage note and of the security interest thereon.

> 63. By communicating with RAVAGO by mail before the document recording the transfer of the Deed of Trust and mortgage note by BoA on June 18, 2013, NATIONSTAR and/or NATIONSTAR, LLC misrepresented the nature and amount of the debt owed, as no document had been recorded nor any assignment communicated to RAVAGO

-12-

to show that NATIONSTAR or NATIONSTAR, LLC had any right to collect the note, thereby misrepresenting the nature and amount of the debt owed.

64. By communicating via the mails and telephone from April through July, 2013, regarding the trustee sale, NATIONSTAR, NATIONSTAR LLC., and RECONTRUST, and each of them, communicated about an action that they were not legally entitled to take, as the trustee sale was not legally allowed to be taken pursuant to the Attorney General's Settlement [NMSA] and Arizona Law.

## 1.  The Nationstar Defendants were not debt collectors under FDCPA.

Although the Complaint alleged that both ReconTrust and the Nationstar Defendants were liable for violations of the FDCPA, on appeal, Debtor challenges the dismissal only as it pertains to the Nationstar Defendants.  Thus, we limit our analysis to those defendants.

The allegation that the Nationstar Defendants collect "debts owed for the owners of the note as a regular and normal part of their business" is insufficient to permit an inference that the Nationstar Defendants are debt collectors as defined by the FDCPA or that they were acting as such when they were communicating with the Debtor.  Paragraph 24 of the Complaint alleged that Nationstar wrote to the Debtor informing her that it had "received transfer of the loan" effective June 4, 2013 and that Debtor thereafter began working with Nationstar to obtain a loan modification.  The Complaint further alleged, at paragraph 35, that B of A formally assigned the deed of trust to Nationstar on June 18, 2013.

These allegations lead to the inference that as of June 4, 2013, Nationstar was acting on its own behalf in its efforts to collect on the note and deed of trust.  Accordingly, Nationstar

-13-

was acting as a creditor and not a debt collector. See Henson v. Santander Consumer USA Inc., ___ S. Ct. ___, 2017 WL 2507342, at *3 (Jun. 12, 2017) (entities that purchase debts originated by others and then seek to collect those debts on their own behalf are not "debt collectors" under the FDCPA). See also Schlegel v. Wells Fargo Bank, NA, 720 F.3d 1204, 1208-10 (9th Cir. 2013). Debtor contends that Nationstar was a debt collector under the FDCPA because her loan was in default when it was assigned to Nationstar. Debtor references 15 U.S.C. § 1692a(6)(F), which excepts from the definition of debt collector "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . (iii) concerns a debt **which was not in default** at the time it was obtained by such person[.]" (emphasis added). Debtor also cites Perry v. Stewart Title Co., 756 F.2d 1197, 1208 (5th Cir. 1985), in which the court noted that "[t]he legislative history of section 1692a(6) indicates conclusively that a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, **as long as the debt was not in default at the time it was assigned**." (emphasis added). Debtor reads these authorities as supporting the conclusion that if a debt is in default when it is assigned, the assignee is a debt collector.

However, the FDCPA defines a "creditor" as "any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default **solely for the purpose of facilitating collection of such debt**

-14-

**for another**." 15 U.S.C. § 1692a(4) (emphasis added). Given the allegation that Nationstar informed Debtor that it had "received transfer of the loan" effective June 4, 2013, the only inference to be drawn is that Nationstar acted on its own behalf, i.e., as a creditor, in its subsequent collection efforts, despite the facts that the loan was in default and the deed of trust was not formally assigned until June 18, 2013 and recorded on July 16, 2013.

Even if Nationstar was acting as a servicer before B of A formally assigned the deed of trust, mortgage servicers are not "debt collectors" under the FDCPA. Mansour v. Cal-Western Reconveyance Corp., 618 F. Supp. 2d 1178, 1182 (D. Ariz. 2009) (citing Perry, 756 F.2d at 1208; Hulse v. Ocwen Fed. Bank, 195 F. Supp. 2d 1188, 1204 (D. Or. 2002).[6]

### 2. The allegations of the Complaint do not support an inference that the Nationstar Defendants made false, deceptive, or misleading representations.

According to the Complaint, Nationstar Defendants' deceptive conduct consisted of misrepresenting "the nature and amount of the debt owed" by communicating with Debtor before B of A had assigned the deed of trust to Nationstar because, until the assignment, Nationstar had no right to collect on the note and

---

[6]The Ninth Circuit Court of Appeals has recently held that an entity is not a "debt collector" for purposes of the FDCPA if its only role in the debt collection process is the enforcement of a security interest, i.e., a nonjudicial foreclosure. Ho v. ReconTrust Co., NA, No. 10-56884, 2016 WL 9019610, at *4 (9th Cir. May 22, 2017). The Circuit noted, however, that if an entity that enforces a security interest engages in activities that constitute debt collection, it is a debt collector. Id.

-15-

because the trustee's sale was not legally allowed to go forward pursuant to the NMS and "Arizona law."

The NMS does not create a private right of action for enforcement of its terms. See, e.g., Jurewitz v. Bank of America, 938 F. Supp. 2d 994, 997-98 (S.D. Cal. 2013); Rehbein v. CitiMortgage, Inc., 937 F. Supp. 2d 753, 760-62 (E.D. Va. 2013). Debtor does not dispute this, but seems to contend that the NMS created a duty to disclose that the foreclosure was still going forward despite the fact that a loan modification was in process. However, nothing in the allegations of the Complaint suggest that Nationstar LLC made any affirmative misrepresentations or failed to disclose material facts in violation of federal or state law. At oral argument, Debtor's counsel asserted that even if the NMS did not create a duty to disclose, the June 17 Letter to Debtor informing her that Nationstar would determine her eligibility for a loan modification within 20-60 days was misleading because the trustee's sale was set to occur in less than 60 days. However, the Complaint did not allege that the June 17 Letter was the basis for the FDCPA claim. While it is unfortunate that Debtor made the assumption that the foreclosure sale was stayed or cancelled, the Complaint does not plausibly allege that Nationstar had an actionable legal duty to clarify that subject with Debtor.

**D. The bankruptcy court did not err in dismissing the third cause of action for violation of the ACFA.**

Under the ACFA:

> The act, use or employment by any person of any deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or

-16-

concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice.

ARS § 14-1522.

To state a claim under the ACFA, a plaintiff must allege (1) a false promise or representation; (2) made in connection with the sale of merchandise; and (3) resulting and proximate injury. Loomis v. U.S. Bank Home Mortg., 912 F. Supp. 2d 848, 856 (D. Ariz. 2012). The claim must be pleaded with particularity. Id.; Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1103 (9th Cir. 2003) (noting that Rule 9(b)'s particularity requirement applies to state law causes of action brought in federal court). Loan transactions constitute a sale within the meaning of the ACFA, Loomis, 912 F. Supp. 2d at 856, and "merchandise" includes services, ARS 44-1521(5); Haisch v. Allstate Ins. Co., 5 P.3d 940, 944 (Ariz. Ct. App. 2000)

An omission of a material fact made with the intent that the plaintiff rely on the omission is an unlawful practice under the ACFA, Horne v. AutoZone, Inc., 275 P.3d 1278, 1281 (Ariz. 2012) (en banc), but a failure to disclose may be fraudulent only if the defendant had a duty to disclose. Loomis, 912 F. Supp. 2d at 856-67. The ACFA imposes an actionable duty "to refrain from a deceptive act or practice or an omission of any material fact with intent that others rely thereon." AutoZone, 275 P.3d at 1281 (citing ARS § 44-1522(A); internal quotations omitted).

Debtor alleged in the Complaint that:

68. Pursuant to the NMSA, Defendants were required

-17-

to stop foreclosure proceedings while a loan modification application was pending.

69. Defendant BoA acknowledges and advertises on their website . . . that they are required to suspend foreclosure activities under certain circumstances which would be similar to RAVAGO'[sic] circumstances.

70. NATIONSTAR has stated to the Attorney Generals of Arizona and of California that they would comply with the National Mortgage Settlement Standards for any loans transferred to them by BoA.

71. Defendants intentionally made a misrepresentation in concealing the fact to RAVAGO that foreclosure proceedings would not be suspended pending a loan modification application.

72. Defendants' actions were done by evil hands guided by evil minds.

73. Defendants intended that others, including RAVAGO, rely upon such misrepresentation and concealment of the fact that NATIONSTAR and/or NATIONSTAR, LLC would comply with the NMSA standards.

74. RAVAGO suffered damages as a result of the reliance on Defendants' misrepresentation and concealment, in that she lost her home to foreclosure, and was required to expend time and funds in moving, and other purposes[.]

75. RAVAGO has suffered other damages in an amount to be proven at trial.

The bankruptcy court dismissed this claim because the NMS does not provide for a private right of action and thus does not confer a duty to disclose, and because Debtor had alleged no other source of a duty to disclose. Debtor argues on appeal that the ACFA itself imposes the duty, but the duty to refrain from deceptive practices still requires a defendant to have breached a duty to disclose in the first instance. Here, Debtor conceded she was in default and had notice of the trustee's sale. She did not allege that she was promised that the foreclosure sale would be stayed or cancelled. Nor did she allege that she was aware of

-18-

the NMS or the representations on B of A's website before the trustee's sale, and her counsel conceded as much at oral argument. Such allegations would be necessary to establish that the cited representations and concealment of the fact that the foreclosure was not suspended were the proximate cause of her damages.

Finally, Debtor did not plead this claim with particularity, which requires that she allege all of the circumstances of the alleged fraud, "including the who, what, when, where and how of the misconduct charged." Vess, 317 F.3d at 1106. With respect to B of A, Debtor alleged only that B of A has misleading information on its website. With respect to the Nationstar Defendants, she alleged only that they represented to the attorneys general of Arizona and California that they would comply with the NMS for any loans transferred to them by B of A; other than that, the allegations establish only that Nationstar personnel were working with her on a loan modification without mentioning the fact that the trustee's sale was still going forward.[7]

**E. The bankruptcy court did not err in dismissing the sixth cause of action for tortious breach of duty of good faith and fair dealing.**

In Arizona, an implied covenant of good faith and fair

---

[7]On appeal, Debtor notes that lenders and servicers are now prohibited under RESPA from continuing foreclosure proceedings while a loan modification is under consideration (with some exceptions). 12 C.F.R. 1024.41(g). Even if this regulation would have applied to Debtor's circumstances, it did not become effective until January 10, 2014.

dealing is part of every contract. Wells Fargo Bank v. Arizona Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund, 38 P.3d 12, 28 (Ariz. 2002) (en banc), as corrected (Apr. 9, 2002). "The implied covenant of good faith and fair dealing prohibits a party from doing anything to prevent other parties to the contract from receiving the benefits and entitlements of the agreement." Id. A party may breach its duty of good faith and fair dealing without breaching an express term of the contract. Snyder v. HSBC Bank, USA, N.A., 913 F. Supp. 2d 755, 772 (D. Ariz. 2012).

"A party may bring an action in tort claiming damages for breach of the implied covenant of good faith, but only where there is a special relationship between the parties arising from elements of public interest, adhesion, and fiduciary responsibility." Id. (citations and internal quotations omitted). Such relationships include common carrier and passenger, innkeeper and guest, physician and patient, attorney and client, and insurer and insured. Rawlings v. Apodaca, 726 P.2d 565, 575 (Ariz. 1986) (en banc).

With respect to this cause of action, the Complaint alleged:

95. RAVAGO is, and at all times relevant to this complaint, a citizen of the State of Arizona, one of the States those Defendants made promises through the NMSA to.

. . . .

97. Defendant BoA, as a signatory to the NMSA, has placed the actions of servicing and owning mortgages and foreclosures in the public interest, in that they made a public promise to refrain from certain practices with 49 Attorneys General suing BoA on behalf of the people of those states.

98. Defendant NATIONSTAR AND NATIONSTAR, LLC have

-20-

placed the actions of servicing and owning mortgages in the public interest, as they have publically [sic] declared that they would comply with the NMSA for any loans transferred to it from BoA and are required to comply with the NMSA as a result of RAVAGO's loan modification application status at the time of its acquisition of RAVAGO's DOT.

99. By ignoring the NMSA Article IV.B.6, preventing "dual tracking" by continuing with the Trustee's sale after RAVAGO submitted her application to BoA and NATIONSTAR and/or NATIONSTAR, LLC, Defendants, and each of them, acted to impair the right of RAVAGO to receive the benefits of a fair loan modification application process.

100. Defendant BoA had the power to suspend and cease foreclosure activities and did not do so while processing RAVAGO's loan modification application.

101. Defendant NATIONSTAR/NATIONSTAR, LLC had the power to suspend and cease foreclosure activities and did not do so while processing RAVAGO's loan modification application.

102. BoA and NATIONSTAR and/or NATIONSTAR intentionally ignored the duties required by the NMSA, and intentionally continued to pursue a Trustee's sale on PROPERTY.

103. BoA and NATIONSTAR and/or NATIONSTAR never intended to offer RAVAGO a loan modification at any time.

104. Defendants' actions were done by evil hands guided by evil minds.

105. As a result of Defendants, and each of their, actions, RAVAGO suffered damages in an amount to be proven at trial.

It is not clear from the Complaint what contract was at issue. In her opening brief, Debtor clarified that the relevant contract was the agreement to consider a loan modification. The bankruptcy court dismissed this claim because Debtor did not allege that Defendants had a contractual duty to offer or consider a loan modification or that she had a right to a loan modification pursuant to the deed of trust or other loan

-21-

documents. On appeal, Debtor attempts to clarify her allegations, stating that she did not claim she was entitled to a loan modification, but that "the implied duty of good faith entitled her to fair treatment when Defendants agreed to consider her application." However, in the absence of an enforceable contract to offer or consider a loan modification, there can be no implied duty of good faith and fair dealing. And because the NMS did not create a private right of action for a failure to stay foreclosure proceedings while a loan modification was being considered, there is simply no legal basis for Debtor's claim.

Moreover, to recover tort damages for a breach of the implied covenant of good faith and fair dealing, there must be a "special relationship" between the parties to the contract. The Complaint does not allege facts supporting a plausible inference that there was a special relationship "arising from elements of public interest, adhesion, and fiduciary responsibility." As a matter of law, a lender and borrower are not fiduciaries (unless the lender also provides financial advice upon which the borrower relies). McAlister v. Citibank (Ariz.), a Subsidiary of Citicorp, 829 P.2d 1253, 1258 (Ariz. Ct. App. 1992). Nor does a difference in bargaining power alone establish a special relationship for purposes of the implied convenant of good faith and fair dealing. Id.

The Complaint alleged that the public interest is implicated because in the NMS the Defendants publicly promised that they would not dual track. However, because the NMS does not create a private right of action, it cannot form the basis for a "special relationship" between a lender and an individual borrower for

-22-

purposes of the implied covenant of good faith and fair dealing.

Debtor cites <u>Quintana v. Bank of Am.</u>, No. CV 11-2301-PHX, 2014 WL 690906, at *6 (D. Ariz. Feb. 24, 2014), in which the U.S. District Court for the District of Arizona ruled that a plaintiff's allegations that B of A represented that it would consider her for a modification but did not was sufficient to survive a motion to dismiss. However, in that case, the question of whether a special relationship existed between the parties was not raised by the parties or analyzed by the court. The court in <u>Quintana</u> found the allegations of the complaint sufficient because the note and deed of trust at issue allowed for modifications, and plaintiff had alleged that B of A's employees represented to plaintiff that B of A would consider her application for a loan modification, but B of A did not do so. Accordingly, <u>Quintana</u> does not help Debtor.

**F. The bankruptcy court did not err in dismissing the seventh cause of action for recording false documents under ARS § 33-420.**

Under ARS § 33-420(A),

A person purporting to claim an interest in, or a lien or encumbrance against, real property, who causes a document asserting such claim to be recorded in the office of the county recorder, knowing or having reason to know that the document is forged, groundless, contains a material misstatement or false claim or is otherwise invalid is liable to the owner or beneficial title holder of the real property for the sum of not less than five thousand dollars, or for treble the actual damages caused by the recording, whichever is greater, and reasonable attorney fees and costs of the action.

To state a claim under this provision, the plaintiff must allege (1) that the document is forged, groundless, contains a

-23-

misstatement or false claim or is otherwise invalid and (2) that the misstatement or false claim was material to her. See <u>Sitton v. Deutsche Bank Nat'l Trust Co.</u>, 311 P.3d 237, 243 (Ariz. Ct. App. 2013).

The Complaint alleged, with respect to this cause of action:

> 2. Defendants RECONTRUST, NATIONSTAR and/or NATIONSTAR LLC, and each of them, knew that they had no authority to record the Trustee's Deed sequence number 20132070170 at the Pima County Recorder, as they had not instituted the Trustee's sale, had no authority under the NMSA, nor had any authority under Arizona agency law to complete the Trustee's sale.

> 3. More than twenty days before the filing of this complaint RAVAGO has requested several times in writing that RECONTRUST, NATIONSTAR and/or NATIONSTAR LLC correct its actions in allowing the Trustee's Deed to be effective by vacating its sale and the Trustee's Deed. Defendants refused to take corrective action.

> 4. As a result, RAVAGO has lost her home to a false Trustee's sale.

The bankruptcy court dismissed this claim because Debtor had not alleged that the trustee's sale was not conducted in accordance with the procedures established under Arizona law for trustee's sales, ARS §§ 33-801 through 821. Under those statutes, any defense or objection to the sale is waived unless raised before the sale occurs. ARS § 33-811(C); <u>BT Capital, LLC v. TD Service Co. of Arizona</u>, 275 P.3d 598, 600 (Ariz. 2012) (en banc). ARS § 33-811(C) provides:

> The trustor, its successors or assigns, and all persons to whom the trustee mails a notice of a sale under a trust deed pursuant to § 33-809 shall waive all defenses and objections to the sale not raised in an action that results in the issuance of a court order granting relief pursuant to rule 65, Arizona rules of civil procedure, entered before 5:00 p.m. mountain standard time on the last business day before the scheduled date of the sale. A copy of the order, the application for the order and the complaint shall be delivered to the trustee within twenty-four hours after

-24-

entering the order.

On appeal, Debtor correctly points out that an action for damages under ARS § 33-420 is not necessarily waived by failure to object to the sale before it occurs. "[F]ailure to enjoin a trustee's sale does not waive claims for monetary awards under § 33-420(A). Section 33-811(C) contemplates the waiver of 'defenses and objections to the sale' only, and nothing in § 33-420(A) provides a defense to a sale or makes recovery contingent upon a sale." Sitton, 311 P.3d at 240. However, where the plaintiff's claim necessarily depends upon a determination that the sale was improper, as it does here, the trustee's deed cannot be a false document. Glava v. JPMorgan Chase Bank, N.A., No. 1 CA-CV 13-0719, 2015 WL 849685, at *3 (Ariz. Ct. App. Feb. 26, 2015); see also Madison v. Groseth, 279 P.3d 633, 638 (Ariz. Ct. App. 2012) (holding that tort claims based on an improper trustee's sale were waived under ARS § 33-811(C)). The court in Glava distinguished Sitton:

> Unlike Sitton, where the false recording claims were based upon alleged misstatements and other defects in documents that existed irrespective of the subsequent trustee's sale . . . , the complained of document in this case only becomes false if the trustee's sale was improper. Therefore, the trial court properly found that claim had been waived.

Glava, 2015 WL 849685, at *3.

As in Glava, Debtor's underlying theory, as set forth in paragraph 2 of the allegations relating to this cause of action, and conceded in the bankruptcy court, is that the trustee's sale itself was invalid. Accordingly, the bankruptcy court did not err in dismissing this claim.

Debtor argues that the bankruptcy court erred because it

-25-

assumed that Debtor could have filed an objection to the sale before it was scheduled. Debtor contends that she could not have known that Nationstar was the beneficiary under the deed of trust until the day before the sale when the assignment was recorded. The logic of this argument is difficult to discern and is inconsistent with allegations that ReconTrust had noticed the trustee's sale in April 2013 and that Nationstar had notified Debtor that B of A had transferred the loan to it effective June 4, 2013. Debtor also argues that if B of A had initially authorized the trustee's sale, the sale was invalid because at the time of the sale B of A had no interest in the Property. However, this argument is simply another attack on the validity of the sale. As such, it has been waived.

**G.    Debtor has waived any argument that the bankruptcy court abused its discretion in dismissing the Complaint with prejudice.**

In her pleadings in the bankruptcy court, Debtor asked the court to permit her to amend the Complaint if Defendants' motion to dismiss was granted. However, her counsel did not pursue that argument at the hearing on the motion to dismiss, and the bankruptcy court thereafter dismissed the second through seventh causes of action with prejudice. Although the bankruptcy court did not make specific findings as to its reasons for denying leave to amend, it did find that there was no authority to support the proposition that the NMS could be a basis for a duty of care. Given that all of the dismissed causes of action were premised upon alleged breaches of duties created by the NMS, it appears that the bankruptcy court concluded that amendment would

be futile.

On appeal, Debtor did not assign error to the bankruptcy court's denial of leave to amend or propound any argument as to how the Complaint could be amended to state a cause of action. Therefore, the issue is waived.  See Meehan v. County of Los Angeles, 856 F.2d 102, 105 n.1 (9th Cir. 1988) (issue not briefed by a party is deemed waived); see also Jodoin v. Samayoa (In re Jodoin), 209 B.R. 132, 143 (9th Cir. BAP 1997) (Panel does not normally consider matters not specifically and distinctly argued in appellant's opening brief).

**CONCLUSION**

For the reasons set forth above, the bankruptcy court had authority to enter a final judgment in the adversary proceeding and did not err in dismissing Debtor's second, third, sixth and seventh causes of action with prejudice.

Accordingly, we AFFIRM.